## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MICHELLE Q.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. 20-CV-591-CVE-CDL** |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.**[1] | ) |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The matter has been referred to the undersigned for report and recommendation. For the reasons set forth below, the undersigned **recommends** that the decision of the Administrative Law Judge (ALJ) be **affirmed**.

### I.     Legal Standards

#### A.     Five-Step Agency Process

The Social Security Act (Act) provides disability and disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423.

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). At step one, the ALJ determines whether the claimant is engaged in any substantial gainful activity. A person who is performing substantial gainful activity is not disabled. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. A claimant who does not have a severe impairment is not disabled. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d), 416.920a(d)(2); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is disabled. Otherwise, the ALJ proceeds to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. If the claimant can perform her past relevant work, she is not disabled. Step four is comprised of three distinct phases.

*See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 416.920(e). Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023 (citing Social Security Ruling (SSR) 86-8). If the claimant can perform her past relevant work, she is not disabled.

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

**B.     Standard of Review**

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence

3

is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.   Background

### A.   Plaintiff's Allegations

Plaintiff was 43 years old when she filed the pending application. (R. 93). She alleged disability due to post-traumatic stress disorder (PTSD) and problems with her feet. (*Id.*; *see also* R. 50-51, 106). Plaintiff also suffers from anxiety, a degenerative spine condition, and knee pain, and has complained of problems with her neck and arm. (*See* R. 71-72).

Plaintiff has a high-school education and spent four years in the military. (R. 85). She testified that her PTSD stems from experiences in the military, including having been sexually assaulted. (*See* R. 84). Plaintiff alleges that, whenever she is near a man of the same race as her assailant, "it sends [her] into a panic . . . [and] fight or flight" response. (R. 84; *see also* R. 21, 53, 1173-1174, 1602). She claims that, due to PTSD, "I don't get up. I don't go out of the house. I call in and tell them that I'm not coming in." (R. 74).

Plaintiff uses a service dog because of her PTSD. (R. 24, 1205). She receives disability benefits from the U.S. Department of Veterans Affairs (VA) and has been rated as unemployable, according to VA records. (R. 468). She lives alone and cares for several pets in addition to her service dog. (*See* R. 85). Plaintiff reportedly experiences flashbacks,

4

during which she has to stay in her house, close the curtains, and hold her dog. She also has problems with loud noises. She testified that she has nightmares and night sweats, requiring that she sleep during the day, for a total of approximately 16 hours per day. (R. 21, 77). Plaintiff alleges that her medication causes stomach pain, daily vomiting, dizziness, and paranoia. (*See* R. 21).

Since leaving the military in 2004, Plaintiff has not worked full-time. However, she has performed some part-time work since then, including as a landscape worker and water hauler. (R. 31, 57-58, 72-73). She testified that she lost a job due to problems getting along with others, and she does not get along well with authority figures. (*See* R. 22).

### B.     Procedural History

Plaintiff filed for Title II disability benefits on November 13, 2015. (R. 10). She alleges a disability onset date of March 1, 2015. Plaintiff's claim was denied initially and on reconsideration. *Id*. Plaintiff subsequently requested a hearing before an Administrative Law Judge (ALJ). The ALJ held a hearing on July 20, 2018, at which Plaintiff waived her right to have counsel appear on her behalf. (R. 44). A vocational expert (VE) also testified at the hearing. (R. 57-59). The ALJ denied benefits in a decision dated September 4, 2018. In that decision, the ALJ determined that Plaintiff has an RFC for light work, with additional physical and mental restrictions, and found Plaintiff not disabled at step five. (R. 133). On appeal, the Appeals Council remanded the ALJ's decision for resolution of two specified issues. (*See* R. 147-148).

On remand, the ALJ held another hearing and subsequently denied benefits in a decision dated January 17, 2020. (R. 15-38). In his second decision, the ALJ found an RFC

for a restricted range of sedentary work, and found Plaintiff not disabled at step five. (R. 20, 32). Plaintiff appealed the ALJ's second decision to the Appeals Council, which denied Plaintiff's request for review on September 15, 2020. (R. 1-6). As a result, the ALJ's January 17, 2020 decision became the final decision of the Commissioner. (*See* R. 1). Plaintiff then timely appealed to the district court.

### III.    The ALJ's Decision

#### A.    Step One

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2015. (R. 17).

#### B.    Step Two

At step two, the ALJ found that Plaintiff has severe impairments of status post-bilateral foot surgeries, status post-right knee surgery, degenerative joint disease of the left knee, impingement syndrome of the right shoulder, obesity, PTSD, depression, and anxiety. (R. 17).

#### C.    Step Three

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal the criteria of any Listing, specifically addressing Listings within section 1.00 (musculoskeletal system) and 12.00 (mental disorders). (*See* R. 18-20). The ALJ found that Plaintiff has a moderate limitation in each of the four "paragraph B" domains: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18). Because Plaintiff does not have at least one extreme or two or more marked limitations, the

6

paragraph B criteria are not satisfied. *Id*. The ALJ also referenced the "paragraph C" criteria

(for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined

that they were not satisfied. (R. 19).

### D.    Step Four

The ALJ determined that Plaintiff

> has the [RFC] to perform sedentary work as defined in 20 CFR
> 404.1567(a) except with additional limitations. [Plaintiff] is able to
> lift and/or carry ten pounds occasionally and up to ten pounds
> frequently. [Plaintiff] is able to stand and/or walk at least two hours
> in an eight-hour workday and sit at least six hours in an eight-hour
> workday. [Plaintiff] must avoid work above shoulder level.

(R. 20). Mentally, Plaintiff "is able to perform simple, repetitive tasks [and] interact with

supervisors and coworkers no more than occasionally, but she is unable to work with the

public." *Id*. Because she has no past relevant work, the ALJ proceeded to consider the

availability of jobs at step five. (R. 31-32).

### E.    Step Five

Based on the VE's testimony as to a hypothetical claimant with Plaintiff's age,

education, work experience, and RFC, the ALJ found that Plaintiff can perform the

requirements of representative occupations, including:

> ***Clerical sorter***, sedentary exertion, unskilled work, specific
> vocational preparation (SVP) level 2, DOT # 209.587-010, with
> 54,000 jobs existing in the national economy; and
>
> ***Filler***, sedentary exertion, unskilled work, SVP level 2, DOT #
> 731.685-014, with 76,000 jobs existing in the national economy.

(R. 31-32). The ALJ concluded at step five that Plaintiff is not disabled. (R. 32).

7

## IV.    Discussion

Plaintiff argues that the ALJ did not properly (1) consider all medical source opinions; (2) consider Plaintiff's VA disability and unemployability rating; and (3) evaluate Plaintiff' subjective statements.

### A.    Medical Source Opinions

According to Plaintiff, the medical source opinions supported a more restrictive physical and mental RFC.

#### i.    Dr. Lee

In a letter dated March 17, 2014, Robert Lee, D.P.M. stated:

> Our office began seeing [Plaintiff] in 2011. She was having pain in both of her feet largely due to standing and walking on concrete for her work. We have treated her for plantarfascitis[sic], neuralgia, metatarsalgia and more recently for neuroma and capsulitis of the 3rd MP joint of her left foot. We have even tried various surgical corrections, all of which did help her temporarily but, because she stands and walks on concrete, her foot [problems] keep returning. We are even contemplating another operation on her left foot.
>
> After much care and consideration, I think it best that [Plaintiff] not return to standing or walking on concrete floors.

(R. 489). Plaintiff argues that the ALJ failed to consider Dr. Lee's opinion properly under the applicable regulations. Although the ALJ's RFC determination restricted Plaintiff to a limited range of sedentary work, Plaintiff argues that the ALJ failed to account for the additional limitation that Plaintiff should not be required to stand or walk on concrete floors.

Under the Commissioner's regulations in effect for claims filed before March 27, 2017—which apply to this case—in weighing the opinion of a treating physician, an ALJ

8

must first determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). A treating physician's opinion is due "controlling weight . . . as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* (quoting *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003)). Accordingly, "[w]hen an ALJ rejects a treating physician's opinion, he must articulate specific, legitimate reasons for his decision." *Id.* (citing *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted)).

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300. Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1300-01 (quotation omitted). After considering these factors,

the ALJ must provide good reasons for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(c)(2). The reasons must be specific enough to make clear to any subsequent reviewers the weight the ALJ assigned to the opinion and the reasons for that weight. *See Watkins*, 350 F.3d at 1300.

Here, the ALJ explained that he accorded "some weight" to Dr. Lee's opinion. (R. 30). ALJ acknowledged Dr. Lee's notation that Plaintiff should not return to standing or walking on concrete floors. (R. 30). The ALJ explained that he "accounted for this limitation in reducing [Plaintiff] to a sedentary range of work, which eliminates the need to do much walking at all." *Id*.

Although the ALJ did not designate Dr. Lee's opinion as "controlling," the ALJ's decision clearly explains that he found Dr. Lee's opinion consistent with the RFC he assigned (*i.e.*, for less than a full range of sedentary work). Moreover, the ALJ's decision included extensive analysis of medical evidence and subjective statements consistent with this finding. For instance, the ALJ noted evidence of Plaintiff's activities of daily living, which would involve some amount of walking and standing on hard surfaces, such as shopping in stores for up to an hour, taking care of her dog, preparing meals, and keeping her house "relatively clean." (R. 54; *see* R. 55, 382-83, 1173). Plaintiff's friend reported on December 8, 2015 that Plaintiff cooked and sometimes cleaned her house, cared for a pet, swept and dusted, went outside once per day, and shopped in Walmart. (R. 22). Plaintiff's statements to her providers indicated she has a relatively "active lifestyle." (R. 19; *see, e.g.*, R. 25 (Plaintiff "had been at a cookout the night before and she had a good time. . . . [Plaintiff] reported that she enjoyed fishing"); R. 28 (Plaintiff "was getting

10

involved in the community and taking canning class[sic]. . . . She was working on getting a pontoon boat ready for spring and she was planting a garden."); *id*. (Plaintiff "was noted to have an active lifestyle, in which she cut and split her own firewood, and she had a large garden to tend.")).

Thus, the RFC determination for sedentary work would accommodate Plaintiff's standing and walking limitations. *Compare* 20 C.F.R. § 404.1567(a) ("Jobs are sedentary if *walking and standing are required occasionally* and other sedentary criteria are met.") (emphasis added) *with id*. § 404.1567(b)-(d) (jobs at the light exertional level and higher may "require[] *a good deal of walking or standing*") (emphasis added); *see also DOT*, App'x C ("Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time," in contrast to work at greater exertion levels, which may "require[] walking or standing to a significant degree").

Plaintiff's medical records also support the ALJ's treatment of Dr. Lee's opinion. On July 21, 2015, Plaintiff presented to the VA for pain management. (R. 23). Plaintiff "ambulated without an assistive device," and "[n]o pain behaviors were noted." *Id*. Plaintiff "was noted to complain that she could not do anything, due to physical pain, but this was noted to be incongruent with her presentation and history." *Id*. On February 11, 2016, Plaintiff "ambulated with a steady gait," "exhibited good muscle tone," and "had adequate range of motion in the extremities," and "was able to tandem walk without difficulty." *Id*.

On March 18, 2017, Plaintiff underwent an internal medicine consultative examination. (*See* R. 24). Hope Burkett, D.O., observed that Plaintiff "moved all extremities well, except for the left ankle, which was in a walking cast." (R. 24). Dr. Burkett

did not have an opportunity to examine the left ankle, as Plaintiff "preferred not to remove the cast." *Id*. However, she observed that Plaintiff "ambulated with a stable gait, at an appropriate speed, without the use of assistive devices, other than the walking cast on the left ankle." *Id*. Accordingly, the ALJ concluded that Dr. Burkett's examination findings do not support the alleged severity of Plaintiff's complaints and "does not support additional limitations that would contradict the above [RFC] finding." *Id*.

On September 13, 2018, Plaintiff underwent a neurology diagnostic evaluation. (*See* R. 26). The "EMG/Nerve conduction study was abnormal, but it showed no evidence of acute or chronic denervation" and "was most consistent with residuals of left foot fracture and other bilateral injuries and surgeries involving the lower extremities." *Id*. The ALJ explained that the "examination findings, as well as the objective testing, do not support the alleged severity of [Plaintiff's] subjective complaints," and that "this evidence is not inconsistent with the limitations identified" in the RFC determination. *Id*.

The ALJ set forth substantial objective medical evidence supporting the finding that a sedentary RFC is consistent with Plaintiff's standing and walking limitations, as well as consistent with Dr. Lee's opinion. For example:

- MRI and x-ray imaging from 2017 and 2018 showed a previous sprain of the left medial collateral ligament (MCL), with trace to small volume knee joint effusion, a torn MCL of the right knee, and minimal to mild degenerative change of the left knee. *Id*.

- An August 3, 2018 x-ray of the right ankle was normal. *Id*. X-rays of the left ankle on the same date revealed prominent bony spurring/hypertrophy of the posterior calcaneus, plantar aspect, but the "left ankle was otherwise unremarkable." *Id*.

- A June 22, 2017 MRI of the left foot showed mild enthesopathic changes

12

involving the medial cord of the plantar fascia, with mild to moderate thickening of the proximal medial cord of the plantar fascia, as well as "remote fracture deformity and mild degenerative changes." *Id*. An MRI of the right foot showed trace fluid near the retrocalcaneal bursa, trace non-specific subcutaneous soft tissue edema posterior to the insertion of the Achilles tendon, and mild enthesopathic changes involving the medial cord of the plantar fascia, with mild to moderate thickening of the proximal medial cord of the plantar fascia. *Id*.

- On examination, Plaintiff demonstrated a normal gait, and she "did not require braces, a cane or assistive devices." *Id*. There was "no atrophy, edema, or discoloration over the limbs." *Id*. "Strength was five out of five in all areas." *Id*. "The EMG/Nerve conduction study was abnormal, but it showed no evidence of acute or chronic denervation," and "was most consistent with residuals of left foot fracture and other bilateral injuries and surgeries involving the lower extremities." *Id*. "There was no evidence of generalized peripheral neuropathy affecting any extremity, and no evidence of lumbar radiculopathy affecting the legs." *Id*.

The ALJ's discussion of Dr. Lee's opinion is legally sufficient. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("[W]here the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."); *see also Martinez v. Astrue*, 316 F. App'x 819, 823 (10th Cir. 2009) (unpublished) (where treating physician's statements "were not inconsistent with the ALJ's RFC finding," ALJ was not required to give "specific, legitimate" reasons for rejecting them); *Wilde v. Colvin*, No. 13-CV-486-GKF-PJC, 2014 WL 8106123, at *6 (N.D. Okla. Mar. 11, 2015) (internal citations omitted) ("While the ALJ's application of the two-step inquiry could have been more explicit, this court was able to follow the ALJ's reasoning"); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that a court reviewing an ALJ's decision under § 405(g) "should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our

task; but we cannot insist on technical perfection").

Plaintiff argues that the ALJ was required to inquire whether the alternative jobs identified by the VE would require any standing or walking on a concrete floor. She contends the ALJ failed to meet the Commissioner's burden at step five, because the ALJ did not include any limitations on standing or walking on a concrete floor in his hypothetical questions to the VE. Plaintiff speculates that the job of "filler" (or "stuffer") may involve work inside a factory, necessitating some walking or standing on concrete floors. (*See* Doc. 16 at 7).

This argument fails. First, as explained above, the ALJ reasonably found that an RFC for sedentary work (with additional restrictions) is consistent with Dr. Lee's opinion, because such work "eliminates the need to do much walking at all." (R. 30). Second, Plaintiff's argument overstates Dr. Lee's opinion. Dr. Lee explained that Plaintiff's pain was exacerbated by the conditions of her previous employment. (R. 489). Plaintiff's work between 2011 (when Dr. Lee began treating her) and 2014 (the date of his opinion) was at the heavy exertion level: Plaintiff performed landscaping on a self-employed basis in 2010 and 2011, and beginning in 2013, Plaintiff worked as a "hauler," delivering water, an occupation classified as medium exertion in the DOT and performed at a heavy exertion level. (R. 56-58, 122). Dr. Lee's letter cited this context before stating that Plaintiff should not "*return to* standing or walking on concrete floors." (R. 489) (emphasis added).

The ALJ reasonably did not view Dr. Lee's opinion as a blanket restriction that Plaintiff should never again walk on a concrete floor. Rather, the ALJ found that an RFC for a restricted range of sedentary work would address Dr. Lee's concern regarding

14

Plaintiff's conditions of work. A sedentary RFC clearly rules out Plaintiff's previous, heavy and medium exertion work as a landscape laborer and water hauler. (*See* R. 56-58). As such, the ALJ was under no duty to inquire about the type of flooring associated with sedentary jobs. (*See* R. 87).

<ol start="2" type="i"><li>**Dr. Garner**</li></ol>

Plaintiff argues that the ALJ failed to adequately weigh Dr. Garner's mental consultative opinion. Under the regulations applicable to Plaintiff's claim, the ALJ was required to consider this opinion according to the factors identified in 20 C.F.R. § 404.1527(c), as set forth *supra* Part IV(A)(i).

Dr. Garner opined that Plaintiff is capable of understanding and remembering complex instructions and capable of managing her own funds. (R. 1175). However, Dr. Garner opined that Plaintiff "would appear incapable" of certain other functions during a workday, including "persisting on even simple tasks," interacting with the public, and "interact[ing] at even a limited contact level with coworkers and supervisors." *Id*.

The ALJ found Dr. Garner's opinion is contradictory and inconsistent with other evidence in the record, and therefore accorded the opinion little weight. (*See* R. 30). This explanation is reasonable. It is not clear why Dr. Garner believed that Plaintiff could not "persist on" *simple* tasks, even though she is capable of understanding and remembering *complex* tasks. (*See* R. 1175). Dr. Garner's examination report includes no obvious findings supporting such a severe limitation. (*See* R. 1172-1176). As the ALJ's decision noted, Plaintiff reported PTSD symptoms and depression to Dr. Garner, but denied auditory or visual hallucinations. (*See* R. 25). Dr. Garner observed no dementia; estimated Plaintiff's

intellectual functioning to be in the average range; and observed a cooperative, though anxious, demeanor during the examination. *See id*. Dr. Garner further reported that Plaintiff said she showers or bathes three times per week, cooks several times per week, vacuums at least weekly, and pays bills monthly. (R. 1173).

Additionally, the ALJ noted that Plaintiff reported substantially less daily activity to Dr. Garner than she reported to other medical providers. (*See* R. 25; *compare, e.g.,* R. 1173 ("For leisure [Plaintiff] looked blank and said she just sits.") *with* R. 612 (Plaintiff reported that when she gets out of bed, she "lets the dogs out, takes her pills, feeds cats/dogs, has coffee, sits and watches TV, gets son up"; Plaintiff spends time "mostly in chair playing games and watching TV," and "reports this as the pattern of activity for many years"); R. 1610-1611 (Plaintiff reported "[g]etting involved in community, taking canning class, . . . working on getting pontoon boat ready for Spring[, p]lanting a garden," and caring for three dogs and five cats, in addition to her service dog) *and* R. 1604 (Plaintiff reported that she enjoys fishing, and it helps her to cope with depression)). This reason supports the ALJ's decision to assign little weight to Dr. Garner's opinion that Plaintiff cannot perform simple tasks. (*See* R. 30); *Watkins*, 350 F.3d at 1301; *see also* 20 C.F.R. § 404.1545 (stating that a claimant's RFC "is the most [he or she] can still do despite [his or her] limitations").

Similarly, the ALJ was not bound to adopt the social interaction limitations in Dr. Garner's opinion—only to consider the opinion and to provide valid reasons if he found them inconsistent with the bulk of the record. Plaintiff notes that Dr. Garner opined that Plaintiff is unable to respond appropriately to supervisors or coworkers. However, the ALJ found this opinion was inconsistent with Dr. Garner's own mostly normal mental status

examination, including her observation that Plaintiff's "speech was normal in tone and volume" and her "conversational proficiency was typical for her age." (R. 25). The ALJ also noted that other mental status examinations in the record, and Plaintiff's own statements about her daily activities, are inconsistent with the extreme limitations reflected in Dr. Garner's opinion. (*See* R. 30). Accordingly, the ALJ adequately addressed and explained his reasons for assigning little weight to Dr. Garner's opinion.

### iii.   State Agency Reviewing Examiners

According great weight to the opinions of state agency reviewing psychologists Lisa Swisher, Ph.D. and Joan Holloway, Ph.D., the ALJ found Plaintiff has the mental RFC for "simple, repetitive tasks," with additional restrictions on social interaction. (R. 20). Plaintiff notes that the reviewing psychologists found a marked limitation in understanding, remembering, and carrying out detailed instructions. Plaintiff argues that this finding warranted an additional RFC limitation to carrying out one- to two-step tasks. (*See* Doc. 16 at 7). She contends this restriction would limit her to performing GED Reasoning Level 1 jobs, and therefore would exclude both of the jobs the ALJ identified at step five, which both require Level 2 reasoning.

However, nothing required the ALJ to adopt this additional limitation. In fact, had he done so, the ALJ's RFC determination would have been inconsistent with the reviewing psychologists' opinions, to which the ALJ accorded great weight. Dr. Swisher and Dr. Holloway each indicated that, despite a marked limitation in her ability to understand and remember detailed instructions, Plaintiff is able to perform "simple tasks with routine supervision," but they did not find Plaintiff is limited to one- or two-step tasks. (R. 102-

104, 120-122). Accordingly, Plaintiff has shown no reversible error in the ALJ's mental

RFC determination for "simple, repetitive tasks." (R. 20).

Next, Plaintiff argues that an RFC limited to simple tasks conflicts with any jobs

requiring Level 2 reasoning.[2] In order for a VE's testimony to constitute substantial

evidence supporting an ALJ's finding of nondisability at step five, the ALJ must

"investigate and elicit a reasonable explanation for any conflict between the [DOT] and

expert testimony." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also* SSR

00-04p, 2000 WL 1898704.

However, the relevant case law does not support Plaintiff's argument that an RFC

for simple tasks would preclude any job requiring Level 2 reasoning. *See Hackett v.*

*Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that Level 2 reasoning "appears

more consistent with" an RFC for "simple and routine" work tasks); *Stokes v. Astrue*, 274

F. App'x 675, 684 (10th Cir. 2008) (unpublished) (rejecting argument that limitation to

"simple and routine work tasks" is inconsistent with Level 2 reasoning); *see also Ray v.*

*Comm'r of Soc. Sec.*, No. CIV-18-629-SM, 2019 WL 1474007, at *5 (W.D. Okla. Apr. 3,

2019) (unpublished) (finding that Level 2 reasoning does not, "on its face," conflict with

an RFC limited to simple work-related instructions and tasks; collecting cases; *compare*

---

[2]      Level 2 reasoning requires a worker to

> [a]pply commonsense understanding to carry out detailed but
> uninvolved written or oral instructions. Deal with problems
> involving a few concrete variables in or from standardized
> situations.

*DOT*, App'x C, Section III.

*Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished) (citing Eighth Circuit holding that "a limitation to simple instructions is inconsistent with both level-two and level-three reasoning," but noting that Tenth Circuit has not ruled "whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions").[3] Accordingly, there was no apparent conflict between the DOT and the VE's testimony identifying jobs with GED Level 2 reasoning, and the ALJ was not required to investigate further.

### B.    VA Disability Status

The ALJ found Plaintiff's 100% disabled rating from the VA is entitled to little weight, noting that it is "based upon a different set of rules and regulations that are not binding upon the [Commissioner]."   (R. 31). While the ALJ should consider another agency's determination of disability, the applicable regulations state that such a decision

> is based on [the other agency's] rules and is not [the Commissioner's] decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.

20 C.F.R. § 404.1504 (effective to March 26, 2017); *see Wilkins v. Callahan*, 127 F.3d 1260, 1262 (10th Cir. 1997).

The ALJ should evaluate such an opinion according to the same factors applicable to medical opinions. *See* 20 C.F.R. § 404.1527(f). The ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the

---

[3]    Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*. at § 1527(f)(2). However, "not every factor for weighing opinion evidence will apply in every case because the evaluation of [such an] opinion . . . depends on the particular facts in each case." *Id*. at § 1527(f)(1).

Plaintiff contends that the ALJ failed to adequately address evidence that Plaintiff has been deemed "unemployable" for the purpose of receiving VA benefits. Plaintiff cites two items in the record in support of her argument. First, Plaintiff points to a letter dated September 9, 2015, that was provided to Plaintiff for the purpose of receiving commissary store and exchange privileges. (R. 278). The letter "certif[ies] that [Plaintiff] is an honorably discharged veteran of the Army and has service-connected disability evaluated at 100 percent." *Id*. Second, in a handwritten letter dated October 29, 2019, on stationery from the VA Medical Center in Fayetteville, Arkansas, a social worker stated that Plaintiff "remains unemployable according to VA records." (R. 468).

These letters indicate little more than the fact that Plaintiff was rated 100% disabled and unemployable by the VA—a fact that the ALJ's decision acknowledged. (R. 31; *see* 468, 489). Other evidence in the record indicates that Plaintiff's VA disability rating relates to diagnoses of bilateral plantar fasciitis with bilateral pes cavus and left foot hallus valgus, as well as PTSD. (*See* R. 269-276). The ALJ's decision addressed the medical evidence relating to these conditions extensively, including an explanation of the RFC determination

that spans more than ten single-spaced pages. (*See* R. 20-31).[4]

The ALJ accorded "great weight" to the report of a VA physician, Ricky Kime, M.D. dated September 25, 2018. *Id*. (R. 30). Dr. Kime related a telephone conversation with Plaintiff regarding her examination by another VA physician, David Kastner, M.D., on September 14, 2018. (*See* R. 1776-1779). Dr. Kastner had examined Plaintiff in connection with her request for paperwork to discharge her student loans. (*See* R. 1776). Following the examination, Dr. Kastner stated that, "from a medical standpoint," he "do[es] not feel comfortable saying that [Plaintiff] is not able to engage in any substantial gainful activity in any field of work for flat feet," and that any assessment of PTSD "would have [to be] filled out by psychiatry." *Id*. Dr. Kime reiterated that "it was not Dr. Kastner's opinion that [Plaintiff] was medically disabled so as not to be able to perform any type of work," and that any mental disability would be more appropriately assessed by a mental health provider.  (R. 30; *see* R. 1770-1771).

Furthermore, the ALJ assigned a more restrictive physical RFC than that proposed by the state agency reviewing physicians. The reviewing physicians opined that Plaintiff can perform a full range of light-exertion work. (R. 30). The ALJ rejected this opinion, finding that Plaintiff is limited to a more restrictive range of sedentary work. *Id*.

Regarding mental impairments, the ALJ noted that

---

[4]     For this reason, *inter alia*, this case is distinguishable from *Green v. Comm'r, SSA*, 734 F. App'x 600, 603-604 (10th Cir. 2018), where the VA decision in the record included numerous observations of Plaintiff's functional limitations, substantiated by "extensive psychological evidence" that the ALJ allegedly ignored.

> throughout the record, [Plaintiff] attended group counseling, and she had been able to get along and interact with the other members of the group. The undersigned further notes that on May 20, 2018, she attended group therapy with no distress, and she joined in recreational activities and she interacted with other veterans, and played games. The undersigned also notes essentially normal mental status examinations.

(R. 29) (citing portions of the record). As the ALJ noted, on multiple occasions, Plaintiff reported to medical providers that she enjoyed hobbies such as fishing and gardening. (*See* R. 19, 25, 28). The ALJ explained that some of Plaintiff's reported symptoms were "contradicted by the evidence in the record that shows largely normal mental status examination," and "further contradicted by the fact that [Plaintiff] likes to fish, was learning canning, and was going on vacations." (R. 30).

For the reasons set forth above, the ALJ appropriately found Plaintiff's VA disability rating was entitled to little weight in connection with her Social Security disability application. *See* 20 C.F.R. § 404.1527(f). The ALJ's decision provides valid reasons for these determinations, supported by specific evidence in the record. Accordingly, Plaintiff's argument is without merit. *See Wilkins*, 127 F.3d at 1262 ("It is clear that the agency in this case did recognize and consider the VA's decision, as it is discussed by both the ALJ and the district court. More is not required; no legal error exists.").

### C.      Plaintiff's Subjective Statements

Plaintiff contends that the ALJ improperly discounted her testimony and other statements. In evaluating a claimant's statements regarding his or her symptoms, an ALJ should consider "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to

produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[5]

A claimant's subjective complaints of pain, alone, cannot establish disability. *See* 20 C.F.R. § 404.1529(a). Instead, the entire case record must inform the RFC determination. *See* 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c). In conducting the analysis of the intensity and persistence of a claimant's pain, the agency will consider objective

---

[5]   While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012). *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished).

The applicable regulations further explain that in evaluating pain, the Commissioner considers factors including

(i) [the claimant's] daily activities;
(ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
(vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum*, 385 F.3d at 1273-74 (quoting *Hargis v. Sullivan,* 945 F2d 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

medical evidence and will also "carefully consider any other information [claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c). Such a determination is "peculiarly the province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 2000) (quoting *Diaz v. Sec'y of Health and Hum. Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference").[6] Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Sec'y of Health & Hum. Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)).

Here, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. (R. 22). The ALJ explained this conclusion with valid reasons, supported by specific evidence in the record. First, Plaintiff's physical and mental examinations reflected mostly unremarkable objective

---

[6]     The Commissioner no longer uses the term "credibility." *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (explaining purpose to "eliminat[e] the use of the term 'credibility' from [the Commissioner's] sub-regulatory policy, as our regulations do not use this term," and "clarify[ing] that subjective symptom evaluation is not an examination of an individual's character"). However, the agency continues to follow the same "fundamental rule . . . that 'if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [an ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 n.7 (10th Cir. July 6, 2021) (unpublished) (quoting SSR 16-3p).

findings. (R. 23-25, 27-29). Examinations were negative for sleep disturbance on November 18, 2018 and January 25, 2019. (R. 27). Plaintiff also "reported improvement of her mood and anxiety since her son was given to his father by the state[,] . . . was getting involved in the community and taking canning class[sic] . . . denied depression and suicidal ideations . . . complained of nightmares [and] did not tolerate anti-nightmare medications . . . [but] was able to redirect when she had a nightmare and was able to go back to sleep."). Plaintiff's self-reported activities included watching television, playing video games, fishing, gardening, taking canning classes, and a planned trip to California, which the ALJ found did not support the disabling level of limitation alleged (R. 19, 28-30); *see* 20 C.F.R. § 404.1529(c). Moreover, Plaintiff's mental symptoms at times improved with treatment and lifestyle changes, such as staying busy, reducing her child-care responsibilities, and regularly attending a PTSD counseling group (R. 25, 28).

Plaintiff cites a laundry list of statements that she contends the ALJ ignored. However, many of these statements were directly noted in the ALJ's extensive discussion of the record evidence; others simply are not significantly probative of Plaintiff's functional abilities. For example, Plaintiff contends that the ALJ "failed to capture the discord between [Plaintiff] and her children," citing various portions of the record describing her teenaged son's and adult daughter's specific behavioral and mental health challenges. (Doc. 16 at 11). The focus of disability determination is on the functional consequences of a condition, not merely the diagnosis or the attendant circumstances. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Scull v. Apfel*, 221 F.3d 1352, 2000 WL 1028250, at *1 (unpublished) ("[D]isability determinations turn on the

functional consequences, not the causes, of a claimant's condition."). Accordingly, the evidence Plaintiff cites—including that her son had been suspended from schools, injured animals, was incarcerated, had therapy, and was transferred to the care of his father and a family friend—is relevant only to the extent these circumstances affected Plaintiff's own impairments and her functionality.

In fact, the ALJ devoted substantial portions of his decision to those very issues:

> The undersigned notes that a significant amount of [Plaintiff's] stress was apparently caused by her son. On May 21, 2018, [Plaintiff] received inpatient treatment. She was experiencing a lot of stress with her son and she was checked in to have her mood stabilized. Furthermore, at Exhibit 23F page 8, the claimant's symptom severity was related to time spent with her son (November 27, 2018).

(R. 19 (internal citation omitted); *see also* R. 20 (Plaintiff testified "that her thirteen-year-old son was incarcerated, but he normally lived with her"); R. 24 ("It is noted that throughout this exhibit, [Plaintiff] had considerable trouble with her children . . . ."), R. 25 (Plaintiff "struggled with the thought of giving up her rights to her son, but she knew she would be happier if she did."), R. 28 (Plaintiff "reported improvement of her mood and anxiety since her son was given to his father by the state"), *id.* (Plaintiff "reported frustrations related to her children")).

Other statements Plaintiff cites are cumulative of other evidence that the ALJ addressed. For example, Plaintiff incorrectly states that the ALJ "ignored" evidence that Plaintiff's "PTSD caused her to miss some of her doctor appointments, as she was especially triggered by dark-skinned males and loud noises." (Doc. 16 at 12). In fact, the ALJ acknowledged Plaintiff's repeated statements to this effect. (*See* R. 21 (Plaintiff

testified that "she had a fear of black men, due to [PTSD]; Plaintiff "reported that when there is an African American male nearby, this causes panic"), R. 25 (Plaintiff "reported phobic responses to any African American male, as this was the race of the perpetrator"); *see also* R. 19 (Plaintiff's "ability to go out alone depended on the destination and how many people were there"); R. 20 (Plaintiff testified that "[i]t was easier to stay home"); R. 21 (Plaintiff "often does not get dress[sic] six days per week" and "experiences panic attacks four to five times per week, up to two to three times per day, lasting from five minutes to all day")).

Plaintiff asserts that the ALJ "completely ignored" statements by Plaintiff that she could not stand on concrete; could not "walk too long"; had nightmares and sleep disturbance due to depression; did not manage stress well, "had given her children responsibility for household and lawn chores because of the severity of her feet[sic] pain, depression, and PTSD"; had been fired from "most of her jobs," and forgot to eat and bathe, *inter alia*. (Doc. 16 at 13). To the contrary, review of the ALJ's decision shows that the ALJ addressed these complaints, as well as medical evidence relating to the same problems. (*See, e.g.*, R. 19 (Plaintiff reported in her November 24, 2015 function report that she "did not get along with authority figures well and she had lost jobs due to problems getting along with others," and that Plaintiff "did not manage stress or changes in routine well"); *id.* (Plaintiff "has two friends who go to the store for her when she calls and asks them," but "[w]hile [Plaintiff] has stated that she does not like being around people, she has two friends that help her"); *id.* (Plaintiff relied on help from her friends or children to clean and do laundry); R. 21 (Plaintiff testified "that she is up and down all night due to nightmares,

and she sleeps during the day"; Plaintiff "reported that it hurts her back to sit in a chair, and her legs to numb"; she "has to get up after thirty minutes"; she "is unable to stand in one place, because her feet hurt and it went up her back"; Plaintiff "alleged that her pain was unbearable" and that she could only walk five minutes without stopping); R. 22 (Plaintiff's friend reported that Plaintiff "forgot to bathe and she did not brush her hair" and "needed to be reminded to take care of personal needs and grooming," and that plaintiff "had lost a job due to problems getting along with others, as she left jobs and never returned); *see also* R. 30 (Dr. Lee opined that Plaintiff should not return to "standing or walking on concrete floors").

In summary, the ALJ's decision adequately addressed Plaintiff's testimony at both hearings, issues raised in her written statements, and physical and mental symptoms that Plaintiff reported to medical sources. *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (while "[t]he record must demonstrate that the ALJ considered all of the evidence," the ALJ is not required to address every piece of evidence in the record). The ALJ also adequately explained "the link between the evidence and" consistency determination, as set forth above. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 2000); *see also* 20 C.F.R. § 404.1529.

Plaintiff further argues that the evidence shows her activities decreased with time, and that the ALJ ignored this trend. She notes that under the regulations, an ALJ should "take into account any variations in the level of [a claimant's] functioning" in arriving at a determination of severity over time." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00D2. However, the ALJ acknowledged evidence that Plaintiff had varying symptoms over time.

Substantial evidence supports the ALJ's conclusion that, despite some variation in Plaintiff's symptoms, Plaintiff is capable of performing jobs consistent with the RFC determination. As noted *supra*, other evidence indicates that Plaintiff experienced improvement in some of her symptoms. For example, in February 2019, Plaintiff "felt liberated, . . . . described her mood as 'pretty good' and her affect was full range and mood congruent," with intact judgement and insight. (R. 28). On June 11, 2019, Plaintiff "reported that she was able to keep her [PTSD], depression[,] and anxiety under control, as long as she stayed busy," and Plaintiff "reported that she enjoyed fishing" and "was planning a vacation." *Id*. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax,* 489 F.3d at 1084. For the reasons set forth above, substantial evidence supports the ALJ's consistency determination. Accordingly, Plaintiff has shown no reversible error.

## V.    Conclusion and Recommendation

The undersigned finds that the ALJ's decision is supported by substantial evidence and reflects the application of proper legal standards. The undersigned therefore **recommends** that the decision of the Commissioner finding Plaintiff not disabled be **affirmed**.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation within 14 days. Any such objections must be filed on or before February 11, 2022.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule," which provides that the failure to make timely objections to the magistrate judge's findings or recommendations waives appellate review of factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 28th day of January, 2022.

Christine D. Little
United States Magistrate Judge

30